Esterás, Plaintiff and Appellee, *v.* Esterás et al., Defendants and Appellants.

Appeal from the District Court of San Juan, Section 1, in an Action for Annulment of Designation of Heirs.

No. 1450.—Decided July 26, 1916.

Designation of Heir — Illegitimate Child — Natural Child — Hereditary Right—Complaint.—If an illegitimate son, born prior to the adoption of the Revised Civil Code while his father was married to a woman who was not the son's mother, is designated as the sole heir of his father without right to inherit, an acknowledged natural child of the father has a cause of action for the annulment of the said designation of heirship because he is his father's heir; and it is not essential to the sufficiency of the complaint to allege the date of the birth of the illegitimate child in a different manner from that done in the present case, or whether he was acknowledged by his father, and if so, in what manner, or when his father died, or the names of the parties to the action in which the plaintiff was adjudged to be an acknowledged natural child.

Inheritance—Right of Child.—The law in force at the time of the birth of the child must be invoked to determine the right of the child to inherit from its father.

Id.— Illegitimate Child — Heir — Support — Acknowledgment—Marriage License.—A child born in 1885 by a father incapacitated to contract marriage with the mother on account of his being married to another woman at the time the child was conceived, is illegitimate, pursuant to Law X, Title XIII, *Partida* 6, and he is not entitled to inherit from the father, for his only right was to support; and the fact that the father acknowledged that he was his illegitimate son when in 1904 he gave him permission to marry, does not change his status or confer upon him any rights not recognized by law.

The facts are stated in the opinion.

*Messrs. José* and *Manuel Tous Soto* for the appellants.

*Mr. José G. Torres* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

In an action brought by José Marcelino Esterás Morales

against José, Clara Marina and Gabriel Esterás Maldonado in the District Court of Humacao. and transferred to the District Court of San Juan, Section 1, the parties being represented by their respective mothers, the latter court adjudged, in so far as concerns this appeal, that the designation of José Indalecio Esterás Arroyo by the District Court of Humacao as the heir of José Ignacio Esterás Rivera was null and void.

The defendants having appealed from the said judgment, the first ground on which they base their appeal is that the court erred in not sustaining the demurrer on the ground that the complaint was unintelligible, uncertain and ambiguous and did not state facts constituting a cause of action.

The facts alleged in the complaint were substantially as follows:

(1) That the defendants, represented by their mother, obtained from the District Court of Humacao a designation of their father, Esterás Arroyo, as the sole heir of his father, Esterás Rivera.

(2) That when the court so decreed it had already adjudged the plaintiff to be the acknowledged natural child of said Esterás Rivera in a proceeding of which the plaintiff was not notified and in which he did not appear.

(3) That the designation of heirship was based on the fact that Esterás Arroyo was the illegitimate son of Esterás Rivera and that there was no other person entitled to inherit from him.

(4) That Esterás Arroyo was the adulterous child of Esterás Rivera, born while the latter was married to Francisca Villanueva and before the enactment of the Revised Civil Code.

We are of the opinion that the defendants' demurrer was properly overruled, for if Esterás Arroyo was born before the Revised Civil Code went into effect while his father was married to a woman who was not the son's mother and was adjudged to be his sole heir, but had no right to inherit from

him, as we shall see later, the acknowledged natural child of Esterás Rivera has a cause of action for the annulment of the said designation of heirship because he is the heir of his father, and it is not necessary, as contended by the appellants, that he show the date of the birth of Esterás Arroyo differently from what he did, or whether he was acknowledged by his father and in what manner, or when Esterás Rivera died, or the persons who were parties to the action in which the plaintiff was adjudged to be an acknowledged natural child, inasmuch as such allegations are not essential to the sufficiency of the complaint.

The other grounds of the appeal may be summarized in the statement that the appellants claim that as their father was an illegitimate child acknowledged in 1904 by Esterás Rivera, he is entitled to inherit from him.

There is no dispute between the parties as to the facts, which are as follows: That Esterás Arroyo is the son of Antonia Arroyo and José Ignacio Esterás Rivera and was born in the year 1885 when his father was married to another woman; that in 1904 Esterás Rivera appeared before the Municipal Court of Caguas and gave Esterás Arroyo permission to marry, stating that he was his acknowledged son; that Esterás Rivera died intestate in 1908, leaving brothers but no ascendants or legitimate descendants; that in an action brought by the plaintiff against the brothers, to which action neither Esterás Arroyo nor his children were parties, judgment was rendered on May 22, 1909, adjudging the plaintiff the acknowledged natural child of Esterás Rivera, and that in 1911 in an action to which the plaintiff was not a party, the widow of Esterás Arroyo obtained judgment to the effect that her husband was the sole and universal heir of Esterás Rivera as his acknowledged illegitimate child.

It is, therefore, an established fact that Esterás Arroyo was born when neither the Spanish Civil Code nor the subsequent revised code was in force; hence, in order to determine his rights as heir of his father, we must be governed

by the legislation in force in the year 1885, in accordance with the doctrine laid down in the case of *Lucero et al.* v. *Heirs of Vila,* 17 P. R. R. 141.

Under the legislation in force in 1885, children were divided into two general groups, *legitimate* and *illegitimate,* the former being those born in wedlock and the latter those born out of wedlock. Illegitimate children were subdivided into two other groups, *natural* and *spurious, natural* children being those born of parents who at the time of the conception or birth of the child could marry without dispensation and *spurious* children being all illegitimate children which were not natural children; that is, those born of incest, or adultery or sacrilege and the children of prostitutes. Illegitimate children were also called *bastards,* a term like *spurious,* more strictly applied to children of parents who could not contract matrimony at the time of the conception. Escriche, Dictionary of Law and Jurisprudence, published by Vicente & Caravantes, vol. 1, p. 158. Therefore, the term "bastard" was not applied exclusively to the child of a married man by an unmarried woman as contended by the appellants.

As to children conceived in adultery, such were the issue of persons one of whom at least was united to a third person by the bonds of matrimony, and when the mother was single or a widow and the father was married they were considered as the result of wicked copulation, *ex damnato coitu,* and if the mother were married, of wicked and punishable copulation, *ex damnato et punibili coitu,* for the reason that she incurred the death penalty.

Adulterous children were those conceived in adultery, but as Law 1, Title 15, *Partida* 4, in treating of adultery, provides that it is *a crime for a man knowingly to have carnal intercourse with the wife of another,* some authors of that age considered that adulterous children were only those of a married woman begotten by a man who was not her husband, overlooking the fact that Law 2, Title 15, *Partida* 4,

expressly assumes as *conceived in adultery* the children of
a married man had by a *concubine;* that the evangelical doc-
trine imposes upon the husband the same degree of fidelity
as upon the wife and punishes adultery committed by either;
that by Royal Order of October 25, 1777 (Note 1, Title 28,
Book 12, New Compilation), there was communicated to the
Supreme Council a Royal Decree providing, among other
things, that the children of a second marriage contracted by
a married man during the life of his first wife are adulterous
children in fact, and that also it may be inferred from the
third paragraph of article 85 of the law governing civil mar-
riage that the children which a married man may beget by
a woman not his wife are adulterous children. Escriche,
*supra,* vol. 3, p. 69. Vicente & Caravantes, Commentaries
on the Laws of Toro, vol. 1, p. 163, subdivision 26.

Therefore, in accordance with Law 10, Title 13, *Partida*
6, Esterás Arroyo having been begotten in adultery by Es-
terás Rivera, he had no right to inherit from him *ab intes-
tato,* for his only right was to be supported. Manresa, vol.
1, p. 591. The fact that Esterás Rivera acknowledged Este-
rás Arroyo as his illegitimate child did not change his con-
dition of an adulterous child nor confer upon him rights not
recognized by law.

Besides, Law IX of Toro, which is relied on by the appel-
lants in support of the right of their father, Esterás Arroyo,
to inherit from Esterás Rivera does not recognize that right
in illegitimate children on the side of the father, but only
in those illegitimate on the mother's side in certain cases.

The designation of heirship by Esterás Rivera in favor
of his adulterous child born in 1885 being null and void for
this reason, the plaintiff, as the acknowledged natural child
of the former, has a cause of action to secure a judgment to
that effect; therefore, the judgment appealed from should
be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Hutchison concurred.